IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GRAPHIC STYLES/STYLES INTERNATIONAL LLC,**<br>                    Plaintiff,<br><br>               v.<br><br>**MEN'S WEAR CREATIONS and RICHARD KUMAR,**<br>                    Defendants. | CIVIL ACTION<br><br><br><br>NO.  14-4283 |

## MEMORANDUM OPINION

### I.      Background

Plaintiff Graphic Styles/Styles International LLC ("Graphic Styles") filed this action seeking damages and injunctive relief for Defendants' alleged infringement of its copyrights. Defendants allegedly are residents of Hong Kong, People's Republic of China.  In the present Motion, Graphic Styles seeks leave, pursuant to Fed. R. Civ. P. 4(f)(3), to effect service upon Defendants by e-mail and by "Facebook" posting.  Because Graphic Styles has failed to demonstrate a need for the Court's assistance in effecting service by alternative means, the Motion will be denied at this time without prejudice.

Graphic Styles produces stylebooks containing copyrighted drawings and graphic representations of men's and women's fashion clothing styles.  It licenses the use of its copyrighted materials for promotional purposes, such as websites, brochures and catalogues for use by tailors and manufacturers in the clothing industry.  Defendants are in the business of selling tailored menswear internationally.  They advertise their services to customers through a webpage that illustrates styles of clothing available for purchase.  They then travel to various cities to meet with customers, who select the design and materials for their garments and receive their garments by delivery from Hong Kong.  Graphic Styles alleges that Defendants use its

copyrighted illustrations to solicit business on their website, http://www.MensWearTailor.com. That website lists a physical store location in Hong Kong and invites customers to visit them there. The Website also contains the names of both defendants and invites customers to contact either Defendant Men's Wear Tailors or Defendant Richard Kumar through three listed e-mail addresses. It also contains telephone and fax numbers and a post office box listed as its "mailing address." In addition, Plaintiff has presented evidence of a "Facebook" page apparently maintained by Defendants, which advertises "Men's Wear Creations by Richard Kumar (Hong Kong Bespoke Tailors)" and contains recent posts advertising visits to United States cities in December 2014.

Graphic Styles attempted multiple times between July and November, 2014 to serve Defendants by international certified mail at the address listed on their website. On each occasion, the return receipt was not signed, but was stamped with a stamp bearing both Defendants' names and the business address. Defendants have not filed a responsive pleading or otherwise entered an appearance in this case. Graphic Styles now asks, pursuant to Federal Rule of Civil Procedure 4(f)(3), for leave to serve Defendants by means of e-mail and Facebook. Rule 4(f)(3) permits service on a foreign defendant "by other means not prohibited by international agreement, as the court orders."[1] In addition to not being prohibited by international agreement, to be proper, a form of service must be authorized by the law of the forum; in this case, by the Federal Rules of Civil Procedure. *Brockmeyer v. May*, 383 F.3d 798, 803-04 (9th Cir. 2004).

---

[1] Rule 4(f)(3) applies to service of individual defendants outside "any judicial district of the United States." For foreign corporations, partnerships or associations outside the United States, Rule 4(h)(2) provides that service may be made "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

## II.     Service Under The Hague Convention

Service on an international defendant is governed in the first instance in this case by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention"), *reprinted in* 28 U.S.C.A. Fed R. Civ. P. 4 note.  Graphic Styles contends that its request is permissible under Article 10(a) of the Hague Convention, which states: "Provided the State of destination does not object, the present Convention shall not interfere with—(a) the freedom to send judicial documents, by postal channels, directly to persons abroad."  Graphic Styles reads Article 10(a) to allow it to serve process by international certified mail and extrapolates from there that the Hague Convention "allows for service of process through alternative means not listed, for example 'e-mail' and 'Facebook message,' provided that the destination state does not object to those means."  Mot. at 7.

However, Graphic Styles conclusion that service by mail is permissible under Article 10(a) is not a universally accepted proposition:  It is the subject of a split of opinion among the federal appellate courts.[2]  Courts holding that Article 10(a) permits service by mail have pointed to the "purpose of the Convention to facilitate international service of judicial documents," *Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir. 2004), the decisions of courts in other signatory countries, *id.*; *Ackerman v. Levine*, 788 F.2d 830 839 (2nd Cir. 1986), the opinions of commentators, *Brockmeyer*, 383 F.3d at 802-03; *Ackerman*, 788 F.2d at 839 and the opinion of the State Department, *Brockmeyer*, 383 F.3d at 803.

---

[2] Courts in this District also have been split regarding whether the Hague Convention allows service by mail. *Compare The Knit With v. Knitting Fever, Inc.*, No. 085-4221, 2010 WL 2788203, at *12 (E.D. Pa. July 13, 2010) (permitting service by mail), *and McCarron v. British Telecomm.*, No. 00-6123, 2001 WL 632927, at *2 (E.D. Pa. June 6, 2001) (same), *with Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1082 (E.D. Pa. 1992) (not permitting service by mail), and *Raffa v. Nissan Motor Co.*, 141 F.R.D. 45, 46 (E.D. Pa. 1991) (same).

The countervailing viewpoint stems from a close reading of the Hague Convention which shows that there are no words in Article 10(a) which refer to the concept of service but there are fifteen articles of the treaty as well as Articles 10(b) ("to effect service of judicial documents") and in Article 10(c) (same) that do. The courts that have held service of process by mail impermissible under the Hague Convention have relied on that difference in language usage as indicative that the drafters meant something other than service. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 383-84 (5th Cir. 2002); *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 173-74 (8th Cir. 1989). They have interpreted Article 10(a)'s provision that the treaty did not interfere with the "freedom to send judicial documents, through postal channels" as referring to the ability to send additional judicial documents once service of process had been accomplished by the means established by the treaty. *Nuovo Pignone*, 310 F.3d at 384; *Bankston*, 889 F.2d at 174. Contrasted to this analysis is the thought that Article 10(a)'s use of the phrase "the freedom to *send judicial documents*," when the Convention otherwise uses the term "*service*" throughout is the result of "'careless drafting.'" *Ackerman*, 788 F.2d at 839 (quoting 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4-28 at 165-67 (1984)).

Neither the Supreme Court nor the Third Circuit has yet to rule on this issue. Absent such binding precedent this Court finds the Fifth and Eighth Circuit's decisions the better reasoned. As the *Bankston* court noted, "'the starting point for interpreting a statute is the language of the statute itself. . . . [T]hat language must ordinarily be regarded as conclusive.'" *Bankston*, 889 F.2d at 174 (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)); *see also Prestol Espinal v. Attorney General of U.S.*, 653 F.3d 213, 217 (3d Cir. 2011). "In addition, 'where a legislative body 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that

[the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion.'" *Id.* (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (alteration in original)*; see also Bautista v. Attorney General of U.S.*, 744 F.3d 54, 59 (3d Cir. 2014).  Here, where the drafters from numerous countries used the words "serve" or "service" in fifteen articles of a treaty as well as in Article 10, subsections (b) and (c), it is facile to conclude that they merely chose to select the words "to send" in Article 10(a) by mistake.  *See Nuovo Pignone*, 310 F.3d at 384 ("we rely on the canons of statutory interpretation rather than the fickle presumption that the drafters use of the work 'send' was a mere oversight").

Moreover, the Convention sets out in Articles 2 through 6 specific procedures to be followed in serving initial process through a central authority to be specified by each signatory country.  It provides for service by way of diplomatic channels in Article 8.  Article 19 allows service by any method "permitted by the internal law of the country in which service is made."  None of these methods would be necessary if a plaintiff could serve process merely by dropping a summons in the mail instead.  *See Nuovo Pignone*, 310 F.3d at 385 ("It is unlikely that the drafters would have put in place these methods of service requiring the direct participation of government officials, while simultaneously permitting the uncertainties of service by mail.").

Also unconvincing is the argument that "the reference to the freedom to send judicial documents by postal channels directly to persons abroad would be superfluous unless it as related to the sending of such documents for the purpose of service," *Ackerman*, 788 F.2d at 839 (internal quotations omitted); *accord*, *Bankston*, 889 F.2d at 173.  "Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988).  It does not refer to subsequent filings in the same action.  Having established a highly formalized

methodology to ensure that foreign defendants would have timely, effective notice that an action is pending against them, it appears that the drafters wanted to make clear that the same deliberate, albeit time-consuming, methodology would not also be necessary for subsequent pleadings, once the defendant already had received formal notice of the lawsuit. Making clear that the method of service the Convention created was only required for the initial service of process and not for later "sending of judicial documents" is not superfluous, it is language that appears to be designed to ensure that parties can process with alacrity the many documents they must exchange during litigation.

Given that its signatories acceded to the Hague Convention with the understanding that the treaty required service of process to be made according to Hague Convention procedures, this Court is not prepared to substitute the Convention language for language that is not found therein in favor of a goal of facilitating international service, however tempting that substitution may be given the Court's purpose to secure the just, speedy and inexpensive determination of proceedings that come before it.[3]

### III.  Service Under Rule 4(f)(3)

In addition to its argument that service by e-mail is authorized by the Hague Convention, which this Court has concluded it is not, Graphic Styles contends the Court has discretion to approve e-mail as an alternative means of service under Federal Rule of Civil Procedure 4(f)(3). Rule 4(f)(3) provides that service may be made upon a foreign defendant "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Nevertheless, the Advisory Committee Notes to the Rule state: "Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect

---

[3] In light of this ruling, the Court need not reach the question whether service by e-mail is subsumed within the term "postal channels." *Cf. Agha v. Jacobs*, No. 07-1800, 2008 WL 2051061, *1-2 (N.D. Cal. May 13, 2008) (service by e-mail not permissible in country that objected to Article 10(a)). Given that Article 10(a) does not permit service by "postal channels" it cannot be stretched to permit service by e-mail.

service." Fed. R. Civ. P. 4(f) 1993 advisory committee's note (citing *Volkswagenwerk* , 486 U.S.at 705).  The Notes go on to give examples of circumstances in which a court may fashion alternative service procedures under Rule 4(f)(3):

> The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances.  Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States.

Fed. R. Civ. P. 4(f) 1993, Advisory Committee Note.

Graphic Styles has not made any such showing of the need to resort to alternative means of service at this time.  Its only attempts at service have been by international certified mail.  It has not attempted service pursuant to Hague Convention Article 10(c), which permits "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."[4]  Neither has it explored whether Defendants might be amenable to accept service voluntarily.[5]  Fed. R. Civ. P. 4(d).  Nor has it attempted to serve Defendants when they or their representatives are in the United States meeting with clients which, according to a screenshot of Defendants' "Facebook" page that Graphic Styles provided the Court, Mot. Ex. C at 2, happens with reasonable frequency.  If, ultimately, the only workable means of effecting service is through the

---

[4] Graphic Styles has not provided the Court with any information regarding the service requirements of Hong Kong law.  It could be that service might be accomplished merely by engaging a Hong Kong lawyer or process server to deliver process to the Defendants personally.

[5] Cases where alternative service has been approved often have involved defendants who actively were avoiding service.  *See, e.g.*, *Rio Properties*, 284 F.3d at 1015 ("Rio presented the district court with its inability to serve an elusive international defendant striving to evade service of process").  Here, the fact that Defendants (or their employees) have stamped return receipts with their business stamp bearing both Defendants' names rather than signing it hardly shows that Defendants are avoiding service.  Moreover, Graphic Styles is mistaken in its apparent belief that service would have been effective had the Defendants signed the return receipts.  The only provision of Rule 4(f) that permits service by certified mail is Rule 4(f)(2)(C)(ii), which permits such service only if made by the court's clerk.

Hague Convention, then Plaintiff should take that route rather than attempting, as it does here, to short circuit the rules for international service of process.  And it should do so speedily.  If Hong Kong's Central Authority does not accomplish service within six months, Graphic Styles may return to the Court to seek authority for alternative service.

Graphic Styles filed this case on July 16, 2014.  "[A]lthough . . . Rule 4(m)'s 120-day time limit does not apply to service on a foreign corporation, that does not mean that the time to effectuate service is unlimited." *The Knit With v. Knitting Fever, Inc.*, No. 085-4221, 2010 WL 2788203, at *12 (E.D. Pa. July 13, 2010) (quotation omitted).  "A court may still dismiss a case for failure to serve a foreign defendant within a reasonable time." *Id.* (quotation omitted).  The Court is aware that Graphic Styles may have relied on the conflicting authority in this district, some of which allows service by mail.  Nevertheless, it now is on notice that such service will not be allowed in this case at this time.  If Graphic Styles comes before the Court in six months seeking alternative means of service, it must be prepared to demonstrate what steps it has taken to effectuate service and why such attempts have failed.[6]

For the forgoing reasons, Graphic Styles Motion is denied without prejudice.

Date:  March 12, 2015

                                               **BY THE COURT:**

                                               **/S/WENDY BEETLESTONE, J.**

                                             **WENDY BEETLESTONE, J.**

---

[6] The Plaintiff is no doubt aware that establishing service does not alone establish personal jurisdiction over a defendant.  Today's ruling, and any future ruling the Court may make regarding service of process, should not be taken as any indication whether personal jurisdiction exists in this case.