**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GRAPHIC STYLES/STYLES INTERNATIONAL LLC,**<br>**Plaintiff,**<br><br>**v.**<br><br>**MEN'S WEAR CREATIONS and RICHARD KUMAR,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 14-4283** |

## MEMORANDUM OPINION

Plaintiff Graphic Styles/Styles International LLC brings suit against Defendants Men's Wear Creations and Richard Kumar, asserting claims of copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, *et seq*. On December 8, 2015, default was entered against Defendants for their failure to respond to the Complaint. Following entry of default, Plaintiff filed a motion for entry of default judgment. For the reasons set forth below, Plaintiff's motion shall be granted.

## I. BACKGROUND[1]

Plaintiff Graphic Styles/Styles International LLC ("Graphic Styles") is a limited liability corporation located in Southampton, Pennsylvania, which is in the business of producing stylebooks of men's and women's clothing designs. In 2005, Plaintiff prepared, published, and distributed the Graphic Styles International Stylebook, Best of Seasons through Spring and Summer 2005 (the "2005 Stylebook"). Compl. ¶ 24 n.3. In 2006, Plaintiff prepared, published, and distributed the Graphic Styles International Stylebook, Best of Seasons 2006 (the "2006

[1] This factual background is drawn from the Complaint and exhibits attached thereto. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotation marks omitted).

Stylebook"). *Id.* ¶ 24 n.4. The 2005 Stylebook and 2006 Stylebook (together, the "Stylebooks") contain hundreds of images of men's and women's fashion clothing styles. *Id.* ¶ 24 nn.3-4. Plaintiff registered both Stylebooks as compilations under the Copyright Act.[2] *Id.* The drawings contained in the Stylebooks are the result of several years of work by Plaintiff and its predecessor, and Plaintiff has indicated difficulty in locating artists capable of producing images of comparable quality. *Id.* ¶¶ 19-21.

The Stylebooks contain several clear copyright notices. On the first page, both Stylebooks contain the statement: "The images found in the Styles International Stylebook may not be reproduced in any form or by any means—graphic, electronic, or mechanical, including photocopying or information storage and retrieval systems—without the expressed written consent and permission of the copyright holder." *Id.* ¶ 26. The first page also contained the message: "I encourage you to use this book to enhance your business, however, please do it legally. . . . Any unlawful use or violation of the copyright laws for these illustrations will be prosecuted to the fullest extent of the law." *Id.* ¶ 27. The margin of the left-hand page in each Stylebook contains the notice, "© Copyright, Graphic Fashions, Inc. Phila., PA." *Id.* ¶ 28.

Plaintiff sells copies of the Stylebooks to tailors and tailored clothing businesses for use in face-to-face meetings with clients. *Id.* ¶ 25. Plaintiff also uses the images to make custom books for clients. *Id.* ¶ 29. Finally, for clients who do not wish to purchase a full compilation, Plaintiff sells licenses for the use of the individual images contained in the Stylebooks. *Id.* ¶ 29. Plaintiff's licensing fees are $1,850 per illustration and $2,500 per cover illustration, for use of a single image for one year. *Id.* ¶ 30. Annual renewal fees are $600 for an illustration and $825 for a cover illustration. *Id.*

---

[2] The 2005 Stylebook is registered under copyright registration number TX 6-956-665. The 2006 Stylebook is registered under copyright registration number TX 6-956-762.

Defendant Men's Wear Creations is a Hong Kong-based business that sells custom tailored women's and men's clothing. *Id.* ¶ 4. Defendant Richard Kumar is an owner/member of Men's Wear Creations. *Id.* ¶ 5. Defendants offer customers three primary methods to make a purchase. Compl. Ex. B at 6. First, customers may visit the show room in Hong Kong. *Id.* Second, customers may "Shop in the Comfort of [Their] Office" by viewing images on the Defendants' web site, www.mensweartailor.com (the "Web Site"), and ordering online through a link on the Web Site. *Id.* The images of clothing designs on the Web Site are accompanied by prices listed in U.S. dollars. *Id.* at 10-25. Finally, the Web Site advertises that "Richard Kumar/Kenny Darya and his experienced associates tour the USA, Europe, Australia & Japan throughout the year and would willingly meet you personally to help you with your needs," and touts "regular" visits to 33 states in the United States, as well as 9 European countries, Africa, Australia, the Caribbean, and Japan. *Id.* at 1, 6-8; Pl.'s Mem. of Law in Support of Submission to Show Cause ("Pl.'s Show Cause Br.") Ex. B at 4, 8 (ECF No. 20). Specifically, the Web Site publicized business hours at a hotel in Center City Philadelphia on December 7-8, 2010 and advertised a visit to the same hotel again in 2014. *Id.* at 8; Pl.'s Show Cause Br. at 8. It also advertised a tour stop at a hotel on City Avenue in West Philadelphia in 2013. Pl.'s Show Cause Br. Ex. A at 4. The contact information on the Web Site provides three e-mail addresses, two of which contain Kumar's name. Compl. Ex. B at 6, 9.

The images of custom tailored clothing contained on the Web Site were copied from Plaintiff's Stylebooks. Compl. ¶ 37. Defendants did not obtain permission to use these images from Plaintiff, nor did they attribute the images to Plaintiff. *Id.* ¶ 38. The Web Site continues to display the images as of the filing of the instant motion. Pl's Mem. of Law in Support of Mot. for Default ("Pl.'s Default Br.") at 8 (ECF No. 18).

Plaintiff alleges that Defendants are liable for copyright infringement. Defendants have been served with process pursuant to the Court's order of November 3, 2015, and have failed to respond to Plaintiff's Complaint. Accordingly, default was entered on December 8, 2015, and Plaintiff has now filed a motion for default judgment. Plaintiff alleges willful infringement and seeks the maximum statutory damages of $150,000 per Stylebook and a permanent injunction against future infringement by Defendants. Plaintiff also seeks $12,571.50 in attorney's fees and $560.85 in costs.

## II. LEGAL STANDARD

The entry of a default judgment is "left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). In the Third Circuit, a district court must consider three factors in evaluating a motion for default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Prior to exercising discretion to enter a default judgment, a district court "must first satisfy itself that it has personal jurisdiction over the party against whom default judgment is requested." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citing *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[A] judgment entered without personal jurisdiction is void. . . . [A] district court has the duty to assure that it has the power to enter a valid default judgment."); *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.");

*Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (same). Though plaintiffs bear the burden of proving personal jurisdiction to obtain default judgment, this burden can be satisfied with a *prima facie* showing, and plaintiffs "'may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain.'" *D'Onofrio*, 430 F. Supp. 2d at 438 (quoting *Mwani*, 417 F.3d at 7) (citations omitted in *D'Onofrio*).

## III. DISCUSSION

### A. *Personal Jurisdiction*

A district court may assert personal jurisdiction "over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotation marks omitted). Pennsylvania's long-arm statute extends "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Stat. § 5322(b). Thus, the jurisdiction of a district court sitting in Pennsylvania is defined by the constitutional requirement that a "defendant have 'minimum contacts' in the forum state, and that the exercise of jurisdiction comport[s] with 'traditional notions of fair play and substantial justice.'" *Remick*, 238 F.3d at 255 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be either general or specific. General personal jurisdiction permits a district court to exercise jurisdiction over a defendant for all claims that arise against it. *Id.* (internal quotation marks omitted). Specific personal jurisdiction arises when the defendant's forum-related activities give rise to the plaintiff's cause of action, and allows jurisdiction only over the specific claims related to the defendant's forum-related activity. *Id.*

**a. General Personal Jurisdiction**

A district court may exercise general personal jurisdiction only over defendants whose "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotations marks omitted). For an individual defendant, the place of domicile is generally the forum in which general personal jurisdiction may be exercised. *Id.* at 760. For a corporation, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (internal quotation marks and modifications omitted). Although there is no bright-line rule limiting jurisdiction to the paradigm examples, the Supreme Court has emphasized that general personal jurisdiction is narrowly limited to forums in which a defendant is "essentially at home." *Id.* at 761.

Here, Defendants are not essentially at home in Pennsylvania. Men's Wear Creations' primary place of business is Hong Kong, and there is no evidence in the record that it is incorporated anywhere else. There is also no evidence concerning Kumar's domicile. To the extent that contacts other than the paradigm examples listed in *Bauman* could render a defendant "essentially at home" in a given state, Defendants' contacts with Pennsylvania—which are similar to their contacts with several other U.S. states and international locations—fall far short. Accordingly, the Court does not have general personal jurisdiction over either Defendant.

**b. Specific Personal Jurisdiction**

A district court may exercise specific personal jurisdiction "only when the defendant has constitutionally sufficient 'minimum contacts' with the forum, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985), and where subjecting the defendant to the court's jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Pinker v. Roche*

*Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (quoting *Int'l Shoe*, 326 U.S. at 316)). In conducting this jurisdictional inquiry, the court must examine whether the defendant has "availed himself of the privileges of [forum] law and the extent to which he could reasonably anticipate being involved in litigation in the [forum]." *Id.* at 370 (internal quotation marks omitted). Specifically, jurisdiction is proper over a commercial entity that "has taken 'action . . . purposefully directed toward the forum state.'" *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1985) (O'Connor, J., plurality opinion).

To determine whether a web site available in the forum state evinces purposeful availment of the law of a forum, courts in the Third Circuit first consider where the web site falls on the sliding scale originally set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (applying the *Zippo* framework). The court in *Zippo* articulated a spectrum ranging from "passive" web sites, on which information is merely posted, to "interactive" web sites, which fully facilitate commercial transactions. *Zippo*, 952 F. Supp. at 1124. A passive web site generally cannot serve as the basis for personal jurisdiction, and a commercial interactive web site generally is sufficient to establish minimum contacts. *Id.* The middle ground on the *Zippo* spectrum is occupied by web sites through which business is not transacted directly, but which allow for some exchange of information. *Id.* The jurisdictional sufficiency of web site in the middle ground "is determined by examining the level of interactivity and commercial nature of the exchange of information." *Id*. However, the Third Circuit has emphasized that "the mere operation of a commercially interactive web site" is not enough establish personal jurisdiction in every location where the web site is available. *Toys "R" Us*, 318 F.3d at 454. Rather, in addition to commercial interactivity, "there must be evidence that the defendant 'purposefully

availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* at 454.

Here, although it is unclear if the Web Site is fully interactive or merely allows for the exchange of information with customers,[3] Plaintiff has submitted ample evidence that the Web Site is part of a purposeful effort to conduct business in Pennsylvania. At the very least, the Web Site allows customers to submit informational inquiries and make appointments to meet with Kumar and his associates, doing business as Men's Wear Creations, for the purpose of purchasing clothing. The Web Site specifically includes Pennsylvania among the "states we visit regularly in the USA" on the general page advertising sales tours by Kumar and his associates, and the Web Site has advertised multi-day stops at specific Pennsylvania hotels on at least three occasions—each stop specifically indicating that "Richard Kumar/Kenny Darya and his experienced associates tour the USA . . . and would willingly meet you personally to help you with your needs." To arrange a meeting, customers are directed to send an e-mail, and two of the three e-mail address provided on the Web Site contain Kumar's name. The prices on the Web Site are listed in U.S. dollars. In sum, the Web Site is part of a purposeful effort on the part of Defendants to sell custom tailored clothing to customers in several specific U.S. states, including Pennsylvania. Accordingly, the Court has personal jurisdiction over Defendants for causes of action arising from their Web Site.[4] Since Plaintiff's claims of copyright infringement arise

[3] The images of the Web Site contain a link to "Order Online," but Plaintiff did not submit images of the actual ordering pages, so it is not clear from the record if orders can be consummated entirely through the Web Site.

[4] Plaintiff also argues that the Court has jurisdiction over Defendants' foreign activities under the "effects test" described in *Calder v. Jones*, 465 U.S. 783 (1984). *See IMO Indus. v. Keikart A.G.*, 155 F.3d 254, 265-66 (3d Cir. 1998) (setting forth requirements for establishing jurisdiction under the *Calder* "effects test"). Because the Court finds that Defendants' web site and other contacts with Pennsylvania are sufficient to establish specific personal jurisdiction, it is not necessary to consider Plaintiff's "effects test" argument.

directly from postings on the Web Site, these claims fall within the bounds of the Court's specific personal jurisdiction over Defendants.

**B. *Default Judgment***

To prove a claim of copyright infringement, "a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Copying, for the purposes of copyright law, is "the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the rights to distribute and reproduce copyrighted material." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) (internal quotation marks omitted).

Plaintiff alleges that Defendants posted on the Web Site dozens of copyrighted images belonging to Plaintiff without authorization from Plaintiff. This constitutes copyright infringement. Defendants' failure to appear to defend has deprived Plaintiff of the ability to vindicate its rights without default judgment. Since no litigable defense is apparent from the facts before the Court, and Defendants' failure to appear is a result of their apparent intentional disregard for the service of process delivered pursuant to the Court's order, the entry of default judgment is appropriate at this juncture.

**C. *Permanent Injunction***

A district court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In considering a motion for permanent injunction, a court "must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even

greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

Here, all four factors favor the issuance of a permanent injunction. First, Plaintiff's allegations in the Complaint, taken as true for the purpose of default judgment, make out a straightforward case of copyright infringement. Second, "a showing of a *prima facie* case of copyright infringement . . . raises a presumption of irreparable harm." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F. 2d 1240, 1254 (3d Cir. 1983). The Court has not identified any reason to deviate from this presumption. Third, Defendants will not be prejudiced by an order to discontinue their unlawful use of Plaintiff's intellectual property. Fourth, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Id.* at 1255. Since all four factors favor an injunction, the Court shall permanently enjoin Defendants from continued infringement of Plaintiff's Stylebook copyrights.

**D. *Statutory Damages***

As an alternative to actual damages resulting from copyright infringement, a Plaintiff may recover the statutory damages set forth at 17 U.S.C. § 504(c). Statutory damages are generally limited to not less than $750 and not more than $30,000 for each infringed work, 17 U.S.C. § 504(c)(1), but the upper limit is increased to $150,000 per infringed work if the plaintiff can demonstrate that the infringement was willful. 17 U.S.C. § 504(c)(2). For the purposes of assessing statutory damages, "all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1). A willful violation occurs when a defendant knows or should have known that his or her actions constitute copyright infringement. *See Ackourey v. Raja*

*Fashions Bespoke Tailors*, No. 13-cv-2315, 2014 WL 4473656, at *3 (E.D. Pa. Sept. 11, 2014). As a general rule, failure to defend a copyright claim is grounds for concluding that the infringement was willful. *See Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008); *see also Teri Woods Publ'g, L.L.C. v. Williams*, No. 12-cv-4854, 2013 WL 6179182, at *3 (E.D. Pa. Nov. 25, 2013).

In determining the appropriate amount of statutory damages, courts have substantial discretion, but generally consider several specific factors, including "(1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental." *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987). The factors are not of equal weight and courts place the greatest emphasis on the infringer's intent. *See id.; see also Teri Woods*, 2013 WL 6179182, at *3; *Broadcast Music*, 555 F. Supp. 2d at 544.

Here, Plaintiff has established, for the purposes of the motion before the Court, that Defendants' violations of the copyright for each Stylebook were willful. The Stylebooks contained conspicuous notices that the images were copyrighted. Given these clear notices, a custom clothing professional utilizing these drawings either knew or should have known that the images could not legally be used without permission from the copyright holder. Furthermore, Defendants' continued use of the images and refusal to appear in court to defend their use after Plaintiff's repeated attempts to contact them further demonstrate willful infringement of Plaintiff's copyrights. Looking to the other factors, given the licensing rates set forth in the Complaint, Defendants would have had to pay $501,500 to license 118 images from 2011 until

present.[5] Thus, Defendants saved, and Plaintiff lost, significantly more money from Defendants' unlawful use than the $300,000 combined maximum statutory damages sought by Plaintiff. Finally, Defendants' conduct here represents precisely the type of blatant disregard for intellectual property rights that enhanced damages are intended to deter. Accordingly, Plaintiff has presented sufficient evidence for the Court to determine that maximum statutory damages of $150,000 per infringed work are warranted in this case.[6] Since each Stylebook constitutes a single work for damages purposes, the Court shall award a total of $300,000 in statutory damages to Plaintiff.

**E. *Attorney's Fees and Costs***

A court may, at its discretion, award costs and attorney's fees to a party prevailing in a copyright infringement action. 17 U.S.C. § 505. The district court must determine whether a fee is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although the determination of reasonableness is within the discretion of the district court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The party seeking costs and fees bears the burden of producing evidence of the hours and rates claimed. *Id.* District courts frequently rely upon the Community Legal Services of Philadelphia's fee schedule ("CLS Fee Schedule") as a "fair reflection of the prevailing market rates in Philadelphia." *Rainey v. Phila. Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993) (internal quotation marks omitted); *see also Harris v. Paige*, No. 08-cv-2126, 2013 WL 4718949, at *4 (E.D. Pa. Sept. 3, 2013) (quoting *Rainey* and

[5] The initial one-year license fee for 118 images at $1,850 per image would be $218,300. Each renewal in 2012, 2013, 2014, and 2015 at $600 per image would cost $70,800.

[6] Under Rule 55(b), a court considering a motion for default judgment may conduct a hearing to, *inter alia*, "determine the amount of damages." Fed. R. Civ. P. 55(b). However, a hearing is not necessary in this case because Plaintiff's written submissions provide sufficient evidence to determine appropriate statutory damages, costs, and attorney's fees.

collecting cases). Under the CLS Fee Schedule, which is based on "Philadelphia law firm market survey data and increases in the Consumer Price Index," an attorney with 21 to 25 years of experience charges an hourly rate between $520 and $590. Community Legal Services of Philadelphia, *Attorney Fees*, http://clsphila.org/about-cls/attorney-fees (effective Sept. 12, 2014).

Here, Plaintiff requests $560.85 in costs, which consists of the $400 filing fee and $160.85 for repeated attempts at international service of process. Plaintiff also claims attorney fees in the amount of $12,571.50 arising from 28.9 hours of work at $435 per hour. Plaintiff's counsel has filed a declaration stating that he has been engaged in the practice of law since December 1994 and attaching legal bills detailing the services rendered in this case. The hourly rate of $435 is below the CLS Fee Schedule range for an attorney who has been practicing for 21 years, and the Court thus finds this rate to be reasonable. The number of hours expended is also reasonable considering the motions and briefing required in this matter. Therefore, the Court shall grant Plaintiff's request for attorney's fees and costs, and Defendants shall be ordered to pay attorney's fees in the amount of $12,571.50 and costs in the amount of $435.

## IV. CONCLUSION

Plaintiff has demonstrated that entry of default judgment is appropriate in this matter, that the maximum statutory damages for willful copyright infringement are warranted, and that the requested costs and attorney's fees are reasonable. Accordingly, Plaintiff's motion shall be granted.

Dated: January 25, 2016

**BY THE COURT:**

**/s/ Wendy Beetlestone**

**WENDY BEETLESTONE, J.**